**RECORD IMPOUNDED**

## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1653-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

M.E.,

     Defendant-Appellant.

_____

> Argued March 12, 2026 – Decided July 9, 2026
>
> Before Judges Marczyk and Puglisi.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 23-05-0637.
>
> Nadine Kronis, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Nadine Kronis, of counsel and on the briefs).
>
> Colleen Kristan Signorelli, Assistant Prosecutor, argued the cause for respondent (Wayne Mello, Hudson County Prosecutor, attorney; Colleen Kristan Signorelli, on the brief).

PER CURIAM

Defendant M.E.[1] appeals from a January 12, 2024 Law Division order granting the State's motion to compel production of her cell phone passcode and denying her cross-motion to suppress the seized cell phone and quash the search warrant for the phone. We affirm in part and reverse and remand in part.

I.

In September 2022, the Hoboken Police Department (HPD) responded to a call from seventeen-year-old P.S.,[2] who reported she was being held against her will. The address P.S. provided was the apartment of defendant's boyfriend, R.R. Upon arrival to the scene, HPD officers spoke with P.S., defendant, and R.R.

P.S. reported she met defendant for the first time at a Hoboken bar earlier that evening. They began conversing, and defendant invited P.S. to a party at her friend's house, where defendant said there would be cocaine and alcohol. They left the bar and went to R.R.'s apartment.

P.S. said she went to the bathroom and when she came out, defendant and R.R. were naked and engaging in oral sex on the bed. R.R. asked P.S. to engage

---

[1] We use initials to protect the identity of an alleged victim of sexual offenses. R. 1:38-3(c)(12).

[2] P.S. is referred to as P.A. in the application for a search warrant and communications data warrant (CDW).

in sex with them for $360, which P.S. declined.  She stated she did not go there for sex but simply to party.  Defendant then put cocaine on her own breast and P.S. felt compelled to inhale it.  R.R. gave P.S. $360 but defendant ripped it out of her hands, saying they had to have sex first.

At that point, P.S. told defendant and R.R. she was sixteen years old, and then she and defendant got into a physical altercation wherein she hit defendant in the face with a phone in self-defense.  P.S. reported both defendant and R.R. touched her intimate parts, defendant digitally penetrated her vagina, and R.R. had vaginal sex with her, all without her consent.

P.S. then became uncooperative with police, providing a false name and identification.  She showed police a video of defendant and R.R. discussing paying her more money but then told officers she deleted the video.  She eventually told police nothing happened.

Defendant, who had visible injury to her face, told police P.S. assaulted her.  She confirmed she met P.S. at a bar earlier that evening and invited her to R.R.'s apartment.  Defendant and R.R. started engaging in sex acts, hoping P.S. would join them.  Defendant said P.S. then told them she was sixteen, got aggressive, and assaulted her.  The HPD arrested P.S., charged her with assault,

A-1653-23

and referred P.S.'s allegations of sexual assault and soliciting prostitution to the Hudson County Prosecutor's Office (HCPO).

The next day, P.S. gave a statement to the HCPO special victims unit (SVU) and provided additional details about her interactions with defendant and R.R. P.S. reiterated she met defendant, whom she did not previously know, in a Hoboken bar. While conversing, P.S. gave defendant her social media profile. She then observed defendant use her cell phone to send two text messages to an unknown individual: the first text was a screenshot of P.S.'s social media profile; and the second text indicated a payment of $350. After P.S. saw defendant use cocaine in the restroom, they left the bar and went to R.R.'s apartment. When they arrived, defendant told R.R., "[T]his is her." P.S. again stated she was sexually assaulted by defendant and R.R.

HCPO SVU Sergeant Michelle Lenczuk reviewed the bar's surveillance video, which corroborated portions of P.S.'s statement. The video showed P.S. enter the establishment and sit at the bar, followed by defendant, who sat down next to her. Defendant's cell phone appeared to be an iPhone with three cameras on the back, in a phone case with a white "pop socket" with a design on it. P.S. and defendant engaged in conversation, then moved to a table together. At one

4

point, defendant went into the restroom and P.S. followed. They then returned to the table and later exited the bar together.

Two weeks after the initial report, Sergeant Lenczuk, three other HCPO detectives, and two HPD officers went to defendant's apartment to ask her for an interview. The encounter was captured on body-worn camera (BWC) video.

When defendant answered the detectives' knock on her door, she was holding an iPhone with three cameras on the back, in a case with a pop socket. Sergeant Lenczuk informed defendant she was recording the interaction, identified herself and the accompanying officers, and stated they were conducting an SVU investigation.

Sergeant Lenczuk asked defendant for permission to enter the apartment, and at first defendant responded, "Sure, come on in," but then hesitated at the number of detectives present. Defendant asked if Sergeant Lenczuk could come in without the other officers, but the sergeant explained that would pose a "safety issue" and said she was reluctant to speak with defendant in the hall, where other residents could hear. Defendant then permitted all five officers into her apartment, saying, "Everybody off the floor please."

Once inside, the officers all remained in close proximity to the apartment door. Sergeant Lenczuk advised defendant her "name came up" in an

investigation, asked if she would be amenable to an interview at the HCPO, and advised her she was not under arrest. Defendant asked if she could call her lawyer and then placed the cell phone on a nearby desk. The sergeant advised they did not have an arrest warrant and said if defendant had an attorney representing her, "no worries," defendant could provide the attorney's information and detectives would contact the attorney "to see if they would want [defendant] to come in for a statement."

Defendant picked up the cell phone again and said she would rather speak with her lawyer first. The sergeant explained she would not provide details of the investigation outside the HCPO and again asked defendant for her attorney's information. Defendant answered, "I didn't get a chance to talk to him about anything first, I mean, I don't know what to do here. I need a minute. Can everybody go outside please?" Sergeant Lenczuk responded, "Okay, so do you not want us inside your apartment anymore?" to which defendant responded, "Not at this current moment. No."

Defendant then put her phone down on her kitchen counter, and Sergeant Lenczuk said, "So if you could just do me a favor. Hand me your phone, we're seizing it as evidence actually." Defendant stated, "No, I need a warrant," to which the sergeant responded, "Yes, I am. I don't need a warrant," and explained

A-1653-23

the phone was being seized for "evidence purposes."  Defendant picked up the phone, placed it behind her back, and attempted to retreat further into the apartment.  The detectives forcibly removed the phone from her possession and arrested her.[3]

On October 7, 2022, the State applied for a search warrant and CDW for defendant's cell phone.  The same day, a judge approved the search warrant authorizing a search of the cell phone for:

> any and all stored and observable data, including but not limited to any and all storage (on the cellular device, cloud storage connected to the cellular device, and application storage connected to the cellular device), calls and call logs, contacts, e-mails, Applications (i.e. Snapchat, Facebook, Instagram, Google, etc.), text messages, instant messages, photographs, videos, internet logs, wifi and Internet Protocol Address data and deleted data.

The judge also approved the CDW for subscriber information, call detail records, and historical cell-site location information.  The time frame for both the search warrant and CDW was limited to September 15 through 22, 2022.

---

[3] Defendant was subsequently indicted for third-degree preventing the effectuation of a lawful arrest and fourth-degree obstructing a criminal investigation.  While the order on appeal references both the indictment number and the SVU investigation number, the indictment is irrelevant to the SVU investigation, and therefore, the motion order is final for purposes of appeal.

In April 2023, the State moved to compel production of defendant's cell phone passcode pursuant to State v. Andrews, 243 N.J. 447 (2020). Defendant cross-moved to suppress the seizure of her cell phone. Although defendant did move to quash the search warrant and CDW, she argued the issue in her brief.

After considering argument on the motions, the judge conducted a testimonial hearing during which he considered the search warrant and CDW application, BWC footage, and testimony of Sergeant Lenczuk. The judge issued an oral decision on January 11, 2024, followed by a written decision on January 12, 2024, in which he granted the State's motion to compel production of the cell phone's passcode, denied defendant's cross-motion to suppress, and stayed the order pending appeal.

The judge found Sergeant Lenczuk credible because she had knowledge of the applicable practices and procedures in her profession, testified with candor, and gave direct, responsive answers to questions. As to defendant's cross-motion to suppress, the judge found the warrantless seizure of the cell phone was constitutional because it fell within the plain view exception to the warrant requirement.

The judge found Sergeant Lenczuk was lawfully in defendant's home and in the viewing area of the cell phone after being invited into the apartment. It

was immediately apparent to Sergeant Lenczuk the cell phone was evidence of a crime because she had "probable cause to associate the [cell phone] with criminal activity" under State v. Gonzales, 227 N.J. 77, 93 (2016) (quoting Texas v. Brown, 460 U.S. 730, 741-42 (1983)).  Probable cause was supported by P.S.'s statements the alleged criminal activity involved defendant's use of her cell phone, which Sergeant Lenczuk recognized from having viewed the bar's surveillance video.  Because the judge found the seizure of the phone lawful under the plain view doctrine, he pointedly declined to consider whether there were exigent circumstances justifying the seizure.

Although defendant did not move to quash the CDW, the judge nevertheless considered the merits of her arguments.  As we explain further below, the judge did not address defendant's arguments to quash the search warrant of the cell phone.

The judge also granted the State's motion to compel defendant's passcode, finding the elements of the foregone conclusion test were met.  Andrews, 243 N.J. at 480-81.  Specifically, the judge found:  the cell phone belonged to defendant; she had the phone in her possession on October 6, 2022; she was alleged to have solicited prostitution and communicated with R.R. through use of the cell phone; and the seized phone is the same one seen in the bar's

9

surveillance videos. Because the compelled disclosure of the passcode would not violate defendant's Fifth Amendment protection against self-incrimination, the judge ordered defendant to provide the passcode and information necessary to unlock the cell phone.

On appeal, defendant raises the following points:

POINT I.

THE WARRANTLESS SEIZURE OF [DEFENDANT]'S CELL[]PHONE – AFTER SHE HAD ASKED POLICE OFFICERS TO LEAVE HER HOME SO THAT SHE COULD CALL HER ATTORNEY – WAS NOT JUSTIFIED BY THE PLAIN VIEW EXCEPTION TO THE WARRANT REQUIREMENT AND WAS PATENTLY UNREASONABLE. THUS, THE CELL[]PHONE MUST BE SUPPRESSED, THE SEARCH WARRANT OBTAINED FOLLOWING THE UNLAWFUL SEIZURE MUST BE QUASHED, AND THE ORDER TO COMPEL THE PASSCODE MUST BE REVERSED.

POINT II.

THE SEARCH WARRANT FOR [DEFENDANT]'S CELL[]PHONE MUST BE QUASHED BECAUSE IT IS FATALLY OVERBROAD.

## II.

### A.

We defer to a trial court's factual findings in a suppression hearing "when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). The trial judge has the "'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Reece, 222 N.J. 154, 166 (2015) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "We ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, no deference is owed to the trial court's application of the law to the facts, which is reviewed de novo. State v. Fenimore, 261 N.J. 364, 373 (2025).

"Warrantless searches are presumptively unreasonable under both [the federal and state] constitutions," State v. Cohen, 254 N.J. 308, 319 (2023), and "the clear preference is that police officers secure a judicial warrant before executing a search," Gonzales, 227 N.J. at 90. "[T]o overcome that presumption . . . the State must show by a preponderance of evidence that the search falls

11

within one of the well-recognized exceptions to the warrant requirement." State v. Smart, 253 N.J. 156, 165 (2023). "When determining the propriety of a warrantless seizure, '[t]he question is not whether the police could have done something different, but whether their actions, when viewed as a whole, were objectively reasonable.'" State v. O'Donnell, 203 N.J. 160, 162 (2010) (alteration in original) (quoting State v. Bogan, 200 N.J. 61, 81 (2009)). Thus, courts should analyze "the entire continuum of police action, from entry to seizure: whether entry into an otherwise constitutionally protected area is permitted under an exception to the warrant requirement; whether a continued police presence is permissible; and whether, once there, the warrantless seizure is permitted under a recognized constitutional doctrine." Id. at 164.

"One such exception to the warrant requirement authorizes a police officer to seize evidence or contraband that is in plain view." Gonzales, 227 N.J. at 90. "The whole notion of the plain-view doctrine is that, under such circumstances, the officer does not have to secure a separate warrant from a judge to confirm what [they] ha[ve] seen with [their] own eyes." Id. at 100. Under the federal and state constitutions, if the officer is lawfully "in the area where [they] observed and seized the incriminating item or contraband," and it is "immediately apparent that the seized item is evidence of a crime," then the plain

view exception applies.  Id. at 101.  However, "plain view alone is never enough to justify the warrantless seizure of evidence."  Coolidge v. New Hampshire, 403 U.S. 443, 468 (1971); see also State v. Pineiro, 369 N.J. Super. 65, 73-74 (App. Div. 2004) (stating seizure of an item observed in plain view may be done "only if the officer has probable cause to believe that the item is contraband or evidence and the seizure can be made without intruding into any constitutionally protected area or the intrusion can be made in conformity with the Fourth Amendment.").

If a constitutional violation has occurred in the wake of an unreasonable search or seizure, evidence may be barred from introduction under the exclusionary rule.  "The exclusionary rule 'is a judicially created remedy designed to safeguard' the right of the people to be free from 'unreasonable searches and seizures.'"  State v. Williams, 192 N.J. 1, 14 (2007) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)).  "Under the exclusionary rule, 'the State is barred from introducing into evidence the "fruits" of an unlawful search or seizure by the police.'"  Ibid. (quoting State v. Badessa, 185 N.J. 303, 311 (2005)).

There is no question defendant permitted the officers into her apartment. While law enforcement could have seized the phone upon entering the

apartment, they instead sought to obtain defendant's consent for an interview at the HCPO. Defendant contends as soon as she asked the officers to leave, they were illegally in her apartment and therefore could not seize the phone. We are unpersuaded by this argument because it contorts the requirements of the plain view doctrine.

We consider "the entire continuum of police action" under O'Donnell, 203 N.J. at 164. There is no question defendant consented to the officers' entry into her apartment. When defendant revoked her consent, Sergeant Lenczuk immediately stated she was seizing the phone. As the motion judge aptly found, "[Sergeant] Lenczuk could not be expected to unsee the instrumentality of a crime just because the item was not seized prior to the moment that consent was withdrawn." Officers are not required to ignore evidence of a crime they lawfully observed. See Gonzales, 227 N.J. at 100-01; Bogan, 200 N.J. at 81. Here, the detectives did not impermissibly linger when defendant asked them to leave; rather, their continued presence in her apartment was caused by defendant's own actions in refusing to provide the phone, hiding it behind her back, and retreating further into the apartment.

We are likewise unpersuaded by defendant's arguments detectives should have obtained a search warrant prior to going to the apartment. As Sergeant

14

A-1653-23

Lenczuk explained, they were seeking defendant's cooperation in obtaining a statement from her; they "didn't expect for all this to happen at [defendant's] apartment." Although the detectives "could have done something different," we are satisfied "their actions, when viewed as a whole, were objectively reasonable." O'Donnell, 203 N.J. at 162 (quoting Bogan, 200 N.J. at 81).

For the first time on appeal, defendant contends the officers interfered with her Fifth Amendment right to counsel by seizing the phone. We decline to consider an issue not properly presented to the trial court unless the jurisdiction of the court is implicated or the matter concerns an issue of great public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); see also State v. Witt, 223 N.J. 409, 418-19 (2015). Neither circumstance is present in this matter. Nevertheless, having reviewed the BWC video along with Sergeant Lenczuk's credible testimony, we are unconvinced the detective's seizure of the cell phone was, as defendant now alleges, "in direct response" to defendant's statement she wished to consult with her unidentified counsel.

Defendant's challenge to the order compelling her to provide the passcode to the cell phone hinges on her contention the seizure was unconstitutional. Because we are satisfied the seizure of the phone was permissible under the plain

15

view doctrine, we affirm the provision of the order compelling defendant to produce the passcode and other information necessary to unlock the phone.

B.

We turn to defendant's challenge to the search warrant of the cell phone. "[S]ubstantial deference must be paid by a reviewing court to the determination of the judge who has made a finding of probable cause to issue a search warrant." State v. Missak, 476 N.J. Super. 302, 317 (App. Div. 2025) (alteration in original) (quoting State v. Evers, 175 N.J. 355, 381 (2003)), leave to appeal granted, 263 N.J. 321 (2026). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting State v. Jones, 179 N.J. 377, 389 (2004)). We will reverse an order authorizing a search warrant that is "so clearly mistaken 'that the interests of justice demand intervention and correction.'" Gamble, 218 N.J. at 425 (quoting Elders, 192 N.J. at 244).

However, "[c]ourts . . . should sustain the validity of a search only if the finding of probable cause relies on adequate facts." State v. Boone, 232 N.J. 417, 427 (2017) (quoting Jones, 179 N.J. at 388-89). This is true even "[w]hen the adequacy of the facts offered to show probable cause . . . appears to be

16

marginal." Missak, 476 N.J. Super. at 317 (quoting State v. Kasabucki, 52 N.J. 110, 116 (1968)).

"The application for a warrant must satisfy the issuing authority 'that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched.'" Boone, 232 N.J. at 426 (emphasis omitted) (quoting Jones, 179 N.J. at 388). The same standard applies to a search warrant to obtain information from a cellular phone. Andrews, 243 N.J. at 465-66.

"The particularity requirement [for a search warrant] is uncomplicated," and "the . . . purpose of [the] requirement '[is] to prevent general searches.'" State v. Marshall, 199 N.J. 602, 611 (2009) (quoting Maryland v. Garrison, 480 U.S. 79, 84 (1987)). It "general[ly] mandates that a warrant sufficiently describe the place to be searched so 'that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.'" State v. Feliciano, 224 N.J. 351, 366 (2016) (quoting Marshall, 199 N.J. at 611). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications." Marshall, 199 N.J. at 611 (quoting Garrison, 480 U.S. at 84).

17

A search warrant is presumed valid.  State v. Bivins, 226 N.J. 1, 11 (2016). The burden to establish a warrant's invalidity rests with the defendant challenging it.  Keyes, 184 N.J. at 554; see also Jones, 179 N.J. at 388.  The defendant must prove "that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable."  State v. Valencia, 93 N.J. 126, 133 (1983).

Because it is determinative to the outcome of this appeal, we reiterate the procedural history of the parties' motion practice.  The State moved to compel the passcode for defendant's cell phone.  Defendant moved to suppress "the seizure of [the] cell[]phone and the evidence obtained as a result of its unlawful seizure."  Defendant then filed a letter brief "as both opposition to the [State's motion] and as a cross-motion to quash and suppress the search warrant and [CDW] dated October 7, 2022," although her notice of motion did not include this relief.  Defendant's letter brief argued both the search warrant and the CDW: were not supported by probable cause; did not set forth with particularity the parameters of the search; were without temporal limitation; and authorized a general search through any and all electronically stored data based on conclusory speculation that data may have been hidden or encrypted.  Relying

on <u>Missak</u>, defendant contended the search warrant of the phone was impermissibly overbroad.

Notwithstanding defendant's improper notice, the court's January 12, 2024 opinion and order addressed defendant's arguments to suppress the CDW but not her challenge to the search warrant of the cell phone. These two issues are not interchangeable. The certification in support of the application sought two warrants: a charging and search of the cell phone for the electronically stored data on the phone; and a CDW for the carrier to provide subscriber information, call detail records, and historical cell-site location information. While the two warrants are supported by the same facts, they authorize two different searches.

On appeal, defendant does not challenge the denial of her motion to suppress the CDW, but reprises her argument the search warrant of the phone was overbroad under <u>Missak</u>. Because the court did not address it, we are constrained to reverse and remand for consideration of defendant's arguments in this regard. Our function as an appellate court is to deferentially review the decision of the trial court, not to decide the motion in the first instance. We leave to the sound discretion of the trial court whether additional testimony is necessary to decide the issue.

Affirmed in part; reversed and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division

A-1653-23